UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALYSSA VUJAKOVICH,

        Plaintiff,

        v.                                     **DECISION AND ORDER**
                                                  17-CV-1320S
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.     Plaintiff Alyssa Vujakovich challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since March 20, 2013, due to traumatic brain injury, attention deficit disorder, visual learning disability, seizures, and asthma. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

        2.     Plaintiff applied for supplemental security income (SSI) on March 27, 2014. The Commissioner denied her application on August 13, 2014. Five days later, Plaintiff requested a hearing before an ALJ. Thereafter, on March 6, 2017, ALJ Stephen Cordovani held a hearing at which Plaintiff appeared with counsel and testified. Vocational Expert ("VE") Lanell R. Hall also testified. The ALJ considered the case *de novo* and, on June 6, 2017, issued a written decision finding that Plaintiff is not disabled and therefore not entitled to benefits under the Act. The Appeals Council denied Plaintiff's

request for review on November 6, 2017. Plaintiff filed the current action on December 21, 2017, challenging the Commissioner's final decision.[1]

3. On June 15, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9.) On August 10, 2018, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 12.) Plaintiff filed a reply on August 29, 2018 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the function of a reviewing court is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted). The Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been legal error. Substantial evidence is that which amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] The ALJ's June 6, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age,

3

> education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since March 27, 2014, the application date (R. at 14);[2] (2) Neurocognitive disorder secondary to epilepsy and remote history of traumatic brain injury, migraine headaches, obesity, and asthma are severe impairments within the meaning of the Act (Id.); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 15); (4) Plaintiff

---
[2] Citations to the underlying administrative record are designated as "R."

4

has had no past relevant work (R. at 24); (5) Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with certain exceptions[3] and can perform jobs that exist in significant numbers in the national economy (R. at 16-17). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—March 27, 2014, through June 6, 2017. (R. at 26.)

10. Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the RFC fails to incorporate any migraine- or seizure-related "off-task" time and/or work absences; (2) the RFC does not accurately reflect Plaintiff's intellectual limitations; and (3) the ALJ erroneously equates Plaintiff's crafting and limited travel with an ability to engage in substantial gainful activity. In response, Defendant maintains that the ALJ properly formulated Plaintiff's RFC and appropriately considered her testimony. Each argument is discussed in turn.

11. Plaintiff first argues that the ALJ's formulation of her RFC is not supported by substantial evidence because the ALJ failed to incorporate seizure- and migraine-related "off-task" time or work absences. Plaintiff maintains that in the absence of a material inconsistency between medical and non-medical evidence, the ALJ is required to credit Plaintiff's subjective account of her symptoms. For the reasons described below, this argument is unavailing.

---

[3] The ALJ found that Plaintiff retained the RFC for light work, except that she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. She cannot be exposed to loud noises or vibration and cannot work around unprotected heights or dangerous moving mechanical parts. The ALJ further found that Plaintiff can understand, remember, and carry out simple routine instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes, and GED level mathematics limited to level 1 or 2. (R. at 16-17.)

12. In formulating a claimant's RFC, the ALJ must consider all relevant medical and non-medical evidence, including any statements from medical sources concerning the claimant's functionality. See 20 C.F.R. §§ 416.927(c), 416.945(a)(3). Under Social Security Ruling 16-3p ("Evaluation of Symptoms in Disability Claims"), the ALJ must consider all of the evidence in an individual's record when he or she evaluates the intensity and persistence of symptoms, including statements from the individual, family and friends, as well as agency personnel. 82 F.R. § 49462. The claimant, however, bears the burden of demonstrating functional limitations that preclude substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); see also Bowen, 482 U.S. at 146 n.5.

13. The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which would reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. §§ 404.1529, 416.929.

14. "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the

opportunity to observe the witness' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

15. In determining Plaintiff's RFC, the ALJ considered the physical, neurological, psychiatric, and psychological examinations of Plaintiff conducted between 2014 and 2017, as well as Plaintiff's testimony and opinion statements from her friends and family. (R. at 17-24.) The ALJ expressly noted that the combination of Plaintiff's seizures, asthma, obesity, and migraines limited Plaintiff's exertion level and he therefore incorporated corresponding limitations into the RFC. (R. at 23.) The ALJ also considered Plaintiff's headaches but found that no additional RFC limitations were required because the medical evidence did not support Plaintiff's testimony concerning the severity of her headaches. (R. at 24.)

16. As to credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but further found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 19.)

17. Plaintiff argues that because the ALJ did not find her entirely credible, he did not consider all of the evidence of record. This is not so. In addition to weighing treatment records containing unremarkable neurological findings, infrequent treatment, and minimal complaints throughout the longitudinal medical record, the ALJ also considered other evidence pursuant to SSR 16-3p. (R. at 19-23.) For example, the ALJ considered Plaintiff's migraine diary, function report (showing that Plaintiff has some physical limitations due to her headaches), testimony, and statements of family and

7

friends in addition to the objective medical evidence. (R. at 17-19, 24.) The ALJ explained his decision to discount the statements of Plaintiff's friends and family because they are "from people who are insufficiently qualified to speak to issues such as whether or not the claimant can work or is qualified for Social Security disability benefits". (R. at 24.) The record therefore demonstrates that the ALJ properly considered the record evidence concerning Plaintiff's seizures and headaches and sufficiently explained how he weighed that evidence. Plaintiff's first argument is therefore rejected.

18. Plaintiff next argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to fully incorporate Plaintiff's intellectual disability into the RFC. Specifically, Plaintiff argues that the RFC does not account for her speech impediment and many deficits in reading, analytical skills, abstract reasoning, comprehension, memory, attention and concentration, and does not fully incorporate the restrictions noted by Dr. Kevin Duffy, the consultative psychiatrist who evaluated Plaintiff.

19. In his decision, the ALJ found no support in the record to find limitations to the degree alleged, though he did find that Plaintiff had some mental-functioning limitations. (R. at 17, 19-21, 23.) The ALJ noted that Plaintiff received special education services and accommodations through an Individual Education Plan for the 2012-2013 school year to address low math and language scores. (R. at 19.) He further considered medical records that indicated that Plaintiff was "friendly and cooperative" and "follows commands easily." (Id.) The ALJ also considered that a state agency psychiatric consultant, Dr. G. Kleinerman, opined that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace, and that she should be able complete "simple work." (R. at 21.)

8

20. The ALJ also considered Dr. Duffy's findings. (R. at 15.) Dr. Duffy's notes indicate that Plaintiff "was cooperative and presented with generally adequate social skills;" had good personal hygiene and grooming; her speech showed articulation difficulties; attention and concentration were at least mildly impaired; and she achieved borderline or low-average scores in verbal comprehension, perceptual reasoning working memory, processing speed, and full-scale IQ tests. (R. at 294-97, 300-301.) Dr. Duffy diagnosed mild to major neurocognitive disorder secondary to epilepsy. (R. at 297.) According to Dr. Duffy's medical source statement, Plaintiff can follow and understand simple directions and instructions; can perform simple tasks independently; may have some moderate to marked difficulties maintaining attention and concentration at times; may have some mild to moderate difficulties maintaining a regular schedule; may have marked difficulties learning new tasks; and may have marked difficulties performing complex tasks independently. (R. at 296-297.) Dr. Duffy further opined that Plaintiff's cognitive difficulties stem from her active seizure disorder, but she can generally relate adequately with others and can generally deal appropriately with stress. (Id.)

21. Contrary to Plaintiff's arguments, the ALJ considered her mental limitations in formulating her RFC. The ALJ noted that Plaintiff had moderate limitations in understanding, remembering, or applying information, as indicated by her ability to follow spoken instructions, but difficulty with written instructions, math, and memory. (R. at 15.) The ALJ further noted that with regard to concentrating, persisting, or maintaining pace, Plaintiff has only moderate limitations as supported by her ability to decorate cakes and make jewelry, notwithstanding her frequent forgetfulness. (R. at 16.)

22. Despite the ALJ's full consideration of Dr. Duffy's opinion, Plaintiff claims that the ALJ nonetheless erred because he ignored that portion of Dr. Duffy's opinion noting that "the results of the [intelligence evaluation] appear to be consistent with cognitive problems and this may significantly interfere with claimant's ability to function on a daily basis." (Id.) But the ALJ's RFC determination is not inconsistent with this statement. The ALJ incorporated restrictions in Plaintiff's RFC that address her cognitive limitations. Informed by Dr. Duffy's opinion, the ALJ found that Plaintiff should be limited to "simple routine instructions and tasks with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine," as well as work that requires only GED level 1 or 2 mathematics. (R. at 23-24.) These limitations are consistent with Dr. Duffy's opinion and the other relevant evidence in the record. (R. at 19.) Consequently, the ALJ's RFC formulation is supported by substantial evidence.

23. Lastly, Plaintiff argues that it was improper for the ALJ to rely on her activities of daily living as evidence of her ability to perform substantial gainful activity. Plaintiff points specifically to the ALJ's findings that she is able to craft and was able to visit her boyfriend in Ontario, Canada, by bus. Plaintiff contends that the ALJ's reliance on this evidence as indicative of her activity level is misplaced because her ability to craft is limited by her headaches and seizures and the independent travel occurred only once.

24. Had the ALJ exclusively relied on this testimony in finding Plaintiff not disabled, his determination may well not be supported by substantial evidence. But as discussed above, the ALJ relied on all available medical records and Plaintiff's testimony as a whole in determining that she is not disabled within the meaning of the Act. This

Court therefore finds no reversible error in the ALJ's consideration of Plaintiff's daily activities.

26. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: June 25, 2019
         Buffalo, New York


         /s/William M. Skretny
         WILLIAM M. SKRETNY
         United States District Judge